**Taylor Brent STULL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–86–060–CR.**

Court of Appeals of Texas, Austin.

March 4, 1987.

William P. Allison, Austin, for appellant.

Ronald Earle, Dist. Atty., Paul Womack, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

ON MOTION FOR REHEARING

CARROLL, Justice.

Our opinion of November 5, 1986, is withdrawn.

Appellant was convicted in a bench trial of possession of less than 28 grams of tetrahydrocannabinol in the form of hashish. Tex.Rev.Civ.Stat.Ann. art. 4476–15 §§ 4.02(c)(1) and 4.041(a) (Supp.1987). The trial court assessed punishment at imprisonment for three years, probated, and a fine of $300. In his sole point of error, appellant contends the evidence of his possession of hashish was the product of an unlawful warrantless search and arrest.

The only evidence at trial was the testimony of Lakeway Police Department Lieutenant Ron Wildman. Wildman testified that on October 9, 1985, he received information from a known informant, who in turn had received the information from an unknown third party, that a number of youths were meeting early each morning "for the purpose of using drugs or exchanging drugs before school." According to the information received, the specific location of the morning gatherings was always either at the dead end of Wild Cherry Drive or at one of two alternate sites nearby, all these locales being in a relatively small area immediately north of the Lakeway high school. Wildman went to the dead end of Wild Cherry Drive on the afternoon of October 9 in an attempt to verify the information received. At that location he discovered two hand-rolled cigarettes and a broken pipe, all containing "a greenish plant substance" which, on the basis of his experience and training, he believed was marihuana.

Early the next morning, Wildman hid in bushes near the same location and waited for the youths to arrive. He soon observed the arrival of six vehicles containing approximately twenty youths, one of whom was appellant, and at least one adult. The individuals exited their vehicles and soon began "passing cigarettes around to one another, sharing cigarettes or what [Wildman] suspected to be sharing marihuana cigarettes." Wildman "observed, at one point, one of the kids go to one of the vehicles, reach underneath it, [and] pull some type of container . . . out from under it." A few minutes later, "the kid came back and . . . put this . . . container back underneath the car again." Wildman also observed that "most of the attention [was] focussed around a blue Continental," driven by a person later identified as appellant, and another vehicle. After about thirty minutes, the group dispersed.

Early the second morning (October 11), Wildman and another officer drove to the Wild Cherry location in an unmarked vehicle in an attempt to locate and search the youths for drugs. One or more marked patrol units with several officers aboard remained nearby but out-of-sight. The group did not meet at the Wild Cherry location that morning, however, so Wildman proceeded to one of the alternate sites given by the informant, this one being the dead end of Flintrock Road. Upon his arrival at the Flintrock Road location, Wildman observed four vehicles, one of which was (again) appellant's blue Lincoln Continental, and approximately sixteen youths, one of whom was (again) appellant. At this point, the youths, apparently having seen Wildman's vehicle, were already inor were entering their own vehicles and preparing to leave the scene; no overt criminal activity was observable. Wildman, however, radioed for the backup unit. He then drove his vehicle up to the gathering, got out of his vehicle, announced that he was a police officer, and ordered all the youths to place their hands on their vehicles in the standard pat-down position. Within moments the backup unit(s) arrived, and all the youths and vehicles were searched. One-fifth of a gram of hashish was found in appellant's pants pocket, and appellant was placed under arrest.

It is undisputed that the search and arrest of appellant were carried out without a warrant. The question before us is whether this was lawful.

■ A police officer may arrest an individual without a warrant only if (a) there is probable cause with respect to that individual, *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), and (b) the arrest falls within one of the exceptions specified in Tex.Code Cr.P.Ann. arts. 14.01–14.04 (1977 & Supp.1987). *Self v. State,* 709 S.W.2d 662 (Tex.Cr.App.1986). The State argues that probable cause existed with respect to appellant and that his arrest was proper under art. 14.01(b). We agree.

When, by his own observations, Wildman twice corroborated the tip received from the unknown informant, he had probable cause to believe the entire group of youths observed on the morning of October 11 were committing the misdemeanor offense of marihuana possession. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see generally* 1 W. LaFave, *Search and Seizure* § 3.3(f) (1987). The information known to Wildman was adequate to warrant a person of reasonable caution in the belief that all those present at the specific time and place in question were involved in criminal activity.

■ Article 14.01(b) provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." *See generally* 1 M. Teague, *Texas Criminal Practice Guide* § 10.03[2] (1986). The purpose of the "in presence" test is to prevent warrantless arrests based on information from third parties. *See* W. LaFave, *Arrest: The Decision to Take a Suspect into Custody* 239 (1965); *State v. Lyon,* 103 N.M. 305, 706 P.2d 516 (App.1985); *State v. Jensen,* 351 N.W.2d 29 (Minn.App.1984). An offense is deemed to have occurred within the presence or view of an officer when any of his senses afford an awareness of its occurrence. *Clark v. State,* 117

Tex.Cr.R. 153, 35 S.W.2d 420 (1931). In making this determination, the officer may couple personal observation with previously-acquired knowledge. *Gonzales v. State*, 648 S.W.2d 684 (Tex.Cr.App.1983); *Boyd v. State*, 621 S.W.2d 616 (Tex.Cr.App.1981). The "in presence" test requires only that the officer have probable cause, based on his own observations and knowledge, to believe an offense is presently being committed within his presence or view. *Delgado v. State*, 718 S.W.2d 718 (Tex.Cr.App. 1986); *Drago v. State*, 553 S.W.2d 375 (Tex.Cr.App.1977). In their treatise on criminal procedure, professors LaFave and Israel have written:

> Though the "in presence" rule might be construed as requiring that the misdemeanor *in fact* have occurred in the officer's presence, the modern view is that the officer may arrest if he has probable cause to believe the offense is being committed in his presence. This is sound, for it provides a workable standard (based on how the situation is reasonably perceived at the time, rather than how it turned out) for judging police conduct, and makes it apparent that the officer's senses need not directly detect the misdemeanor so long as they reveal facts providing the reasonable belief that the offense is *now* occurring.

1 LaFave & Israel, *Criminal Procedure* § 3.5(a) at 242–243 (1984 & Supp.1986) (emphasis in original). *See also* 2 W. LaFave, *Search and Seizure* § 5.1(b)–(c) (1987); 5 Am.Jur.2d *Arrest* §§ 31–32 (1962 & Supp. 1986).

In the case of *Bridges v. State*, 166 Tex. Cr.R. 556, 316 S.W.2d 757 (1958), Houston narcotics officers received information that the defendant would deliver heroin in a chewing gum wrapper to one Henderson Hobbs in the 2100 block of McGowen Street. Upon arriving at that address, the officers observed the defendant park his automobile in front of an apartment house at 2102 McGowen, blow the horn twice, and Hobbs come out of the house. As the officers exited their vehicle and approached the defendant's vehicle, the defendant looked toward them and attempted to put a chewing gum wrapper in his mouth, where-

upon one officer knocked it from his hand. The wrapper was then found to contain several capsules of heroin. The court held that

> [t]he information which the Officers had received plus appellant's overt act in attempting to put the chewing gum wrapper in his mouth was sufficient to lead the Officers to believe that appellant possessed a narcotic drug and was committing a felony in their presence and to authorize his arrest and search of the automobile without a warrant.

316 S.W.2d at 760. *See also McLeod v. State*, 450 S.W.2d 321 (Tex.Cr.App.1970); *Slaughter v. State*, 166 Tex.Cr.R. 403, 314 S.W.2d 92 (1958).

In *Miller v. State*, 458 S.W.2d 680 (Tex. Cr.App.1970), police officers received information that one Gary Ross had marihuana in his Houston apartment. The officers set up a surveillance at that address and, over a four-day period, observed known users of marihuana enter and leave the apartment, staying only a few minutes each time. Ross' half-brother, the defendant, also a known marihuana-user, was also seen at the address. One night during the surveillance, the officers observed the defendant leave the apartment, cross the street, and open the door of a parked automobile. At that point the officers approached the defendant to inquire whether Ross was in the apartment. The defendant became "extremely nervous" and pitched or dropped a matchbox onto the floorboard of the auto, which he had not yet entered. The matchbox was found to contain marihuana. The court held that:

> [t]he officers' prior knowledge of the appellant as a marihuana user, their recent observations, his nervousness, and his furtive movement in the dark in dropping the matchbox (a receptacle commonly utilized by marihuana users) in the officers' presence was adequate probable cause for the officers to believe a felony was being committed within their presence and the arrest without a warrant was thus authorized under the provisions of Article 14.01.

458 S.W.2d at 683.

■ In *Bridges, Miller,* and the other cases cited, the court upheld arrests under

art. 14.01 when the police officers personally observed behavior that, although not overtly criminal, was, when coupled with the officers' prior knowledge, sufficient to establish probable cause that an offense was *then* occurring. In this regard, we find these cases analytically indistinguishable from the instant cause. Here, Wildman personally observed appellant and the other youths at a specific place and time that, given his previous information, was suspicious to the point of probable cause. We hold that Wildman's observations on October 11 and his prior information, when combined, were sufficient to satisfy the "in presence" requirement of art. 14.01(b).

Finally, we note that since the fruit of the search of appellant's person (i.e., the hashish) was not necessary to support probable cause to arrest, it is not significant that the search immediately preceded the arrest. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

Appellant's point of error is overruled, and the judgment of conviction is affirmed.

SHANNON, Chief Justice, dissenting.

I dissent.

Whenever possible, a peace officer should obtain a warrant before making an arrest. *Honeycutt v. State,* 499 S.W.2d 662 (Tex.Cr.App.1973); *see Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Exceptions to the rule requiring a warrant before arrest are narrowly construed. *Honeycutt v. State, supra.*

The majority holds that Stull's arrest was proper pursuant to Tex.Code Cr.P. Ann. art. 14.01(b) (1977). Article 14.01(b) provides:

A peace officer may arrest an offender without a warrant for any offense *committed in his presence or within his view.* (Emphasis supplied).

The majority's holding is hardly in conformance with the requirement of the Court of Criminal Appeals that art. 14.01(b) be strictly construed. On the morning of October 11, the arresting officer saw Stull do nothing that indicated an offense was being committed or anything that indicated criminal behavior. In fact, when the arresting officer arrived on October 11, he saw no more than Stull and his friends either in or getting into their cars. Nevertheless, the majority concludes that the arresting officer's knowledge of Stull's probable criminal conduct on October 10 was a sufficient basis to conclude that Stull was likewise engaging in criminal conduct on October 11.

Article 14.01(b), however, does not authorize a warrantless arrest unless an offense is *committed* in the officer's presence or within his view. It is plain that on October 11, Stull committed no offense in the officer's presence or within his view. Accordingly, art. 14.01(b) did not empower the officer to arrest him without a warrant.

The opinions relied upon by the majority, *Gonzales v. State,* 648 S.W.2d 684 (Tex.Cr. App.1983); *Boyd v. State,* 621 S.W.2d 616 (Tex.Cr.App.1981); *Miller v. State,* 458 S.W.2d 680 (Tex.Cr.App.1970); and *Bridges v. State,* 166 Tex.Cr.R. 556, 316 S.W.2d 757 (1958) are authority for the proposition that previously acquired knowledge and experience, *when coupled with present personal observation,* may provide probable cause to believe an offense is being committed in the officer's presence. In this appeal, however, when the officer arrived at the Flintrock Road location on the morning of October 11, he saw nothing more criminal than that Stull and the other boys "were entering their own vehicles and preparing to leave the scene."

I would reverse the judgment of conviction.