**Taylor Brent STULL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 373–87.**

Court of Criminal Appeals of Texas, En Banc.

June 7, 1989.

---

William P. Allison, Samuel E. Bassett, Austin, for appellant.

Ronald Earle, Dist. Atty., and William G. Reid, Asst. Dist. Atty., Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant, Taylor Brent Stull, was convicted of the offense of possession of a controlled substance: namely tetrahydrocannabinol. Punishment was assessed at three years' imprisonment and a $300.00 fine. Imposition of the sentence was suspended and appellant was placed on probation.

The Austin Court of Appeals affirmed the conviction in a published opinion. *Stull v. State*, 726 S.W.2d 258 (Tex.App.–Austin 1987). We granted appellant's petition for discretionary review to determine whether the lower appellate court erred in concluding that the arrest and subsequent search of appellant was justified under Article 14.-01(b), V.A.C.C.P. We will reverse.

The record reflects that on October 9, 1985, Lt. Ron Wildman, a Lakeway police officer, received information from a known informant regarding a group of youngsters meeting for the purpose of using or exchanging drugs before school. Because Wildman's informant did not have first hand knowledge of the youngsters' activities the officer set up surveillance to confirm the information. According to Wildman's information the meetings were taking place in the "Majestic Hills" area either at the dead end of Wildcherry Drive, on Flintrock Road or at other locations north of the local high school.

Before setting up formal surveillance of the Wildcherry location, Wildman conducted a preliminary investigation of the site. The officer found what he suspected to be a marihuana pipe and "roaches" or hand-rolled cigarettes containing a greenish plant substance which the officer believed to be marihuana.

On the next day, October 10, 1985, Wildman returned to the Wildcherry location and set up a stakeout. Wildman testified that "about half a dozen vehicles showed up at the scene, and I'd estimate probably 20 youngsters, high school age or older." The officer noted that the group's attention was focused around a blue Continental (later identified as appellant's vehicle) and a blue, black, or silver Blazer. At one point the officer observed "one of the kids go to one of the vehicles, reach underneath it, pull some type of container from out under it and disappeared back behind the Blazer where most of the group was now at and where I couldn't see them." Officer Wildman testified that a number of the youngsters would go to where the Blazer was—out of his range of vision—and return to their car hoods and pass cigarettes around to one another. Wildman suspected, based on his experience, that the group was sharing marihuana cigarettes. The group dispersed after approximately 30 minutes.

Later, on the morning of October 10, 1985, Officer Wildman met with deputy Ronnie Barrett of the Travis County Sheriff's office. Wildman and Barrett decided to set up a stakeout at the Wildcherry location on October 11, 1985. Wildman and Barrett planned to get several officers together, "and when we found the kids there the next morning that we would converge on them and see if we can find drugs." As the plan unfolded on October 11, the officers did not find the group of youngsters meeting at the end of Wildcherry. Officer Wildman proceeded to the other location the informant gave him—Flintrock Road—where he observed 4 vehicles and about 16 youngsters. Wildman radioed the other officers for backup but moved in before the arrival of the other units. Wildman testified that "I believe they had seen my vehicle, and they were starting to move out from where they were at back onto the roadway." It is critical to note, however, that Lt. Wildman testified that he did not observe the group engaging in any of the conduct observed on October 10; that is, the sharing of containers or cigarettes. The officer turned on the red lights, got out of his car, and asked the youngsters to exit their vehicles and place their hands on the cars. After the backup arrived a search of all the vehicles and youngsters ensued. The search of appellant yielded a "wad of paper" containing a brown or greenish-brown substance which was later confirmed to be terahydrocannabinol, hashish.

Appellant challenges the Court of Appeals' application of Article 14.01(b) and contends that his arrest and subsequent search were illegal. Specifically, appellant charges that no offense was committed within the officer's view as required by Article 14.01(b).

■ A police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual, *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), and (2) the arrest falls within one of the exceptions specified in Articles 14.01 through 14.04, V.A.C.C.P.; *Self v. State*, 709 S.W.2d 662, 665 (Tex.Cr.App.1986).

Article 14.01, supra, provides in part:

"(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

■ The test for probable cause for an arrest without a warrant is:

"Whether at that moment the facts and circumstances within the officer's knowledge and of which (he) had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (arrested person) had committed or was committing an offense." *Lunde v. State*, 736 S.W.2d 665, 667 (Tex.Cr.App.1987), citing *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

In addition, "[a]n investigating officer's hunch, suspicion or good faith perception are not [sic] sufficient, alone, to constitute probable cause for an arrest." *Lunde*, 736 S.W.2d at 667. The perceived events must be out of the ordinary, suspicious and tie a suspect with a criminal act. *Glass v. State*, 681 S.W.2d 599 (Tex.Cr.App.1984). Innocent activity, however, can provide the basis for a showing of probable cause. *Illi-*

*nois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527;[1] See also, *Williams v. State,* 621 S.W.2d 613 (Tex.Cr.App.1981). In addition, this Court has previously upheld arrests under Article 14.01(b) when the police officers personally observed behavior that although not overtly criminal, was, when coupled with the officers' prior knowledge, sufficient to establish probable cause that an offense was then occurring. See *Miller v. State,* 458 S.W.2d 680 (Tex.Cr.App.1970); *Lunde,* 736 S.W.2d at 668.

■ Recently, we had cause to reexamine the validity of another 14.01(b) arrest in *Adkins v. State,* 764 S.W.2d 782 (Tex.Cr.App.1988) (plurality opinion). In *Adkins,* the defendant's conviction was affirmed based on a factual situation where information provided by a reliable informant was substantiated by a police officer's personal observation of defendant's specified conduct. 764 S.W.2d at 786. And in *Lunde,* supra, a police officer, acting on confidential information, placed the defendant under surveillance and verified specified conduct that led to the arrest of the defendant for possession of heroin. The arrest was upheld. 736 S.W.2d at 667–68. Unlike *Adkins* and *Lunde,* the facts in the instant case are distinguishable from those cases in which a combination of personal observations and prior knowledge allowed a warrantless arrest under Article 14.01(b). The record reflects that Officer Wildman's observations on October 10 revealed activities that may well have justified a 14.01(b) arrest; that is, the group engaging in activity that could be reasonably construed, by an experienced police officer, as the using or exchanging of drugs. The officer's observations on October 11, however, relating to

a particular type of noncriminal act, that of departing a location, fail to raise a sufficient degree of suspicion on which to base a showing of probable cause.[2]

As Justice Shannon noted in his dissent:

"Article 14.01(b), however, does not authorize a warrantless arrest unless an offense is *committed* in the officer's presence or within his view. It is plain that on October 11, Stull committed no offense in the officer's presence or within his view. Accordingly, art. 14.01(b) did not empower the officer to arrest him without a warrant.

"The opinions relied upon by the majority, *Gonzales v. State,* 648 S.W.2d 684 (Tex.Cr.App.1983); *Boyd v. State,* 621 S.W.2d 616 (Tex.Cr.App.1981); *Miller v. State,* 458 S.W.2d 680 (Tex.Cr.App.1970); and *Bridges v. State* [166 Tex.Crim. 556], 316 S.W.2d 757 (Tex.Cr.App.1958) are authority for the proposition that previously acquired knowledge and experience, *when coupled with present personal observation,* may provide probable cause to believe an offense is being committed in the officer's presence. In this appeal, however, when the officer arrived at the Flintrock road location on the morning of October 11, he saw nothing more criminal than that Stull and the other boys 'were entering their own vehicles and preparing to leave the scene.'" (Emphasis in original). *Stull,* 726 S.W.2d at 262.

This case is factually analogous to *Hoag v. State,* 728 S.W.2d 375 (Tex.Cr.App.1987), where a warrantless arrest under Article 14.01(b), supra, was not upheld. In *Hoag* the defendant was a burglary suspect who had been placed under surveillance by the

---

1. In *Gates,* Justice Rehnquist, writing for the majority, noted:

"As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens' demands. We think the Illinois court attempted a too rigid classification of the types of conduct that may be relied

upon in seeking to demonstrate probable cause. [citations omitted] In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts." *Gates,* 462 U.S. at 243 n. 13 [103 S.Ct. at 2335 n. 13]. See also *Williams v. State,* supra.

2. Our inquiry is not focused on the innocence or guilt attributable to a particular act, rather, on the degree of suspicion that attaches to particular types of noncriminal behavior.

officers assigned to the case. This Court held in invalidating the 14.01(b) arrest that:

"The officers observed the appellant park his car and enter an apartment complex. When the appellant emerged from the complex, he was carrying a newspaper and a soft drink. The officers saw the appellant take something out of his pocket and put it on the floor of the car. Suspecting that a burglary had taken place, the officers checked the complex for signs that an apartment had been burglarized and found none. We are unable to conclude that these facts indicate in any way that the appellant had committed a burglary or possessed stolen property in the officers' presence. Hence, we find that the arrest cannot be justified on the basis of Article 14.01(b), supra." *Hoag*, 728 S.W.2d at 379.

■ We are also unable to conclude in the instant case that appellant committed an offense in the presence of Officer Wildman. The lack of corroboration between Officer Wildman's prior knowledge and personal observations of October 11 did not establish a proper basis for a 14.01(b) arrest. We hold that the arrest of appellant was unlawful.

Without a warrant, the State carried the burden of establishing the validity of the arrest. *Russell v. State*, 717 S.W.2d 7 (Tex.Cr.App.1986). The State failed to carry this burden. Because the only direct evidence linking appellant to this crime was the contraband seized pursuant to the unlawful arrest, we cannot say beyond a reasonable doubt that the introduction of that evidence made no contribution to the verdict. *Lanes v. State*, 767 S.W.2d 789 (Tex. Cr.App.1989). Consequently, we reverse the holding of the Court of Appeals and remand this cause to the trial court.

W.C. DAVIS, J., dissents.