jefferson 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-139-CR





WAYNE JEFFERSON,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 101,075, HONORABLE BOB JONES, JUDGE PRESIDING



 




 Over a plea of not guilty, the jury found Wayne Jefferson guilty of aggravated
robbery. See Tex. Penal Code Ann. § 29.03(a) (Supp. 1992). The jury assessed punishment at
thirty-years imprisonment. Jefferson appeals from a judgment that convicts and sentences him
accordingly. We will affirm the judgment.



THE CONTROVERSY


 In the early morning hours of December 28, 1989, three men wearing nylon
stockings over their faces forced their way into a Taco Bell restaurant in Austin. Using a knife
as a weapon, they robbed the employees of more than $1000 and escaped in the store manager's
white Isuzu pickup truck.

 When police arrived, the employees described the three robbers: (1) one was
approximately six feet tall and wore a black warmup suit, possibly with red markings on the
shoulder; (2) the second was between six feet and six feet-two inches tall and wore a gray jacket;
(3) the third robber wore white clothing. The employees also told the police that all three robbers
were black. The employees could not describe the robbers' facial characteristics because of the
nylon stockings.

 Austin police officer Ralph Tijerina began searching for the robbers. Within a few
minutes, he saw the stolen Isuzu pickup parked in an east Austin apartment complex. While
waiting in his police car for other officers to arrive, Tijerina saw three black men run toward the
pickup from the middle of the apartment complex. One of the men, who was wearing a white
jacket, turned away from the truck and ran around the corner of a building. The two other men
continued toward the pickup until they saw the police car. They crouched behind the pickup as
if to hide from the police officer and watched the officer through the pickup windshield. The
suspects' clothing matched the clothing described by the Taco Bell employees.

 After a time, the two men stood erect. Tijerina said one of them "put his hands
in his pockets," and both men "kind of kept looking around nervously." They began walking
away, increasing their pace as they got farther from the police car. After Tijerina lost sight of
the two men, the man wearing the white jacket reappeared and ran in the direction the other men
had gone.

 When police officer David Erskine arrived, he told Tijerina he had seen the three
men standing in front of a nearby building. While Erskine approached the building from the
front, Tijerina went to the rear of the building. One of the suspects, later determined to be Paul
Wallace, jogged around to the rear of the building. Meeting Wallace, Tijerina identified himself
as a police officer and ordered Wallace to stop. Wallace refused at first to stop, but then complied
while protesting innocence of any wrongdoing.

 Tijerina frisked Wallace for weapons and felt something "hard and kind of
elongated" in his front pants pocket. Fearing the object was a knife, Tijerina pulled it from
Wallace's pocket. In fact, the object was a key ring containing numerous keys. Erskine ran to
the rear of the building to assist Tijerina, followed by two other officers and the remaining two
suspects, one of whom was the appellant, Jefferson, and the other a man named Michael Brown.

 The officers frisked Jefferson and Brown for weapons. In that frisk, Erskine found
a large bulge in Jefferson's front pants pocket. He removed the object and found it was a "wad
of money," consisting of five- and ten-dollar bills totaling $135. At some point during the search
Officer Tijerina found a nylon stocking behind the building near where Wallace was standing. 
The officers also noted Jefferson was wearing a set of athletic shoes with soles matching a
footprint left at the robbery scene. Based on these facts, the officers took the three suspects "into
custody" on suspicion of armed robbery. Although Tijerina testified the suspects were not under
arrest, Erskine indicated in his testimony that the officers handcuffed the suspects before moving
them.

 The officers next took all three suspects back to the parking lot. There Tijerina
found that a key on the key ring taken from Wallace would unlock the door and turn the ignition
on the stolen pickup. Tijerina testified that the officers then arrested all three suspects for auto
theft and searched them. In Jefferson's rear pants pocket the officers found a nylon stocking. The Taco Bell employees arrived in the apartment-complex parking lot. They told
the police the suspects' clothing matched that of the robbers. Tijerina testified that, after the
victims' identification, the suspects were also under arrest for suspicion of robbery.

 At trial, Jefferson filed a motion to suppress certain evidence, including the
discovery of the nylon stocking and testimony about oral statements he made at the time of his
arrest. The trial court granted the motion as to the oral statements but denied the motion as to the
nylon stocking. After a jury trial, Jefferson was convicted of aggravated robbery. He appeals
on two grounds, assigning error to the denial of his motion to suppress and to the prosecutor's
argument before the jury. 



DENIAL OF MOTION TO SUPPRESS


 In his first point of error, Jefferson contends the trial court erred in overruling his
motion to suppress evidence because the evidence adduced at the pretrial hearing demonstrated
that the arresting officers did not have probable cause to arrest him. He argues that his
warrantless arrest was illegal because it was based on nothing more than the victims' description
of the robbers' race and height and a general description of their clothing.

 We must determine three issues pertinent to Jefferson's complaint: (1) Were the
officers justified in making an investigatory stop? (2) At what point did that investigatory stop
become an arrest? (3) Was there probable cause for that arrest?



Investigatory Stop


 Circumstances short of probable cause may justify temporary detention for the
purpose of investigation. Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983). An
investigatory stop is justified if a police officer, based upon specific and articulable facts,
reasonably concludes the detained person may be associated with a crime. Davis v. State, No.
200-91, (Tex. Crim. App. 1992, Feb. 19, 1992) (citing Terry v. Ohio, 392 U.S. 1 (1968)). For
a Terry stop to be valid, (1) the officer must have a reasonable suspicion that some activity out
of the ordinary is occurring; (2) there must be some suggestion to connect the detained person
with the unusual activity; and (3) there must be some indication that the activity is related to a
crime. Johnson, 658 S.W.2d at 626.

 In Davis the police officer responded to a dispatch call reporting that three black
men were selling narcotics in front of a particular apartment in an apartment complex. Upon
arrival, the officer saw three black men in front of the named apartment. When the men noticed
the officer, they tried to flee in a nearby vehicle. The officer blocked their escape and asked them
to leave the car. In a weapons search of the appellant, who was wearing a long trench coat on a
warm day, the officer found a matchbox. He opened the matchbox and found cocaine. Davis,
slip op., at 2.

 The appellant in Davis filed a motion to suppress the discovery of the cocaine,
which the trial court denied. The court of criminal appeals determined the investigatory stop was
justified. Relying on the suspects' presence in a place where narcotics were reportedly being sold,
the suspects' attempt to flee when the officer arrived, and the fact that the appellant was wearing
a trenchcoat on a warm day, the court of criminal appeals held that "all the factors taken together
created a reasonable suspicion of criminal activity." Id. at 3. (1)

 We believe the combination of factors in the present case created a reasonable
suspicion of criminal activity as well. Jefferson and Wallace, both matching the general
description of the robbers and wearing clothing similar to that described by the robbery victims,
ran to the very truck stolen in the robbery. When they saw Officer Tijerina, they tried to hide,
and soon afterward they began walking in the direction opposite from the officer's car, increasing
their pace the farther they got from the police car. Brown, who was also wearing clothing similar
to that described by the robbery victims, later emerged from the apartment complex and ran to
join Wallace and Jefferson. The three men were together when Erskine saw them. We conclude
these factors justified the investigatory stop. 

 We must now determine whether the developments during the investigatory stop
created probable cause for an arrest.



Time of Arrest


 To determine whether the officers had probable cause to arrest Jefferson, we must
first determine when the arrest took place. "A person is arrested when he has been actually placed
under restraint or taken into custody . . . by an officer or person arresting without a warrant." 
Tex. Code Crim. Proc. Ann. art. 15.22 (1977). An arrest is complete when a person's liberty
of movement is restricted or restrained. Hoag v. State, 728 S.W.2d 375, 379 (Tex. Crim. App.
1987).

 The officers first frisked the suspects for weapons. At some point during the frisk
Tijerina spotted the nylon stocking on the ground near Wallace. After finding the keys on
Wallace and the money on Jefferson, the officers led the suspects back to the stolen pickup. 
Tijerina testified the suspects were merely "in custody" rather than under arrest during the period
between the frisking for weapons and the time when the officers started the engine of the stolen
pickup. Erskine testified, however, that the suspects were not free to leave during that time. 
Moreover, the officers apparently handcuffed the suspects before moving them to the stolen
pickup.

 Although Tijerina testified otherwise, we believe Jefferson was under arrest before
Tijerina used the key to unlock and start the engine of the stolen pickup. See Ruth v. State, 645
S.W.2d 432, 435 (Tex. Crim. App. 1979) (the opinion of the officer as to when a person is under
arrest is not dispositive). The three suspects' liberty of movement was restricted after the officers
discovered the keys, the money and the stocking lying on the ground. See Amores v. State, 816
S.W.2d 407, 411-12 (Tex. Crim. App. 1991) (holding that the suspect was under arrest after
being stopped and handcuffed, even though the officer characterized the stop as an investigative
detention); Woods v. State, 466 S.W.2d 741, 744 (Tex. Crim. App. 1971) (holding that the
suspect was under arrest when officers took him out of his house and told him to put his boots in
tracks left by neighbor's assailant).

 Because the officers arrested the suspects before they used the keys to start the
engine of the stolen pickup, we must ignore that information in determining whether the officers
had probable cause to arrest Jefferson. We restrict our inquiry to those facts and circumstances
existing when the investigative stop became an arrest. 



Probable Cause


 In order for police officers to make a warrantless arrest (2) or search, the State must
show the existence of probable cause at the time of the arrest or search and the existence of
circumstances which made the procuring of a warrant impracticable. Crane v. State, 786 S.W.2d
338, 346 (Tex. Crim. App. 1990); see also Rance v. State, 815 S.W.2d 633, 635 (Tex. Crim.
App. 1991) (the State carries the burden of showing probable cause in a warrantless arrest). The
test for probable cause in a warrantless arrest is "whether at that moment the facts and
circumstances within the officer's knowledge and of which he had reasonably trustworthy
information were sufficient to warrant a prudent man in believing the arrested person had
committed or was committing an offense." Rance, 815 S.W.2d at 635 (citing Stull v. State, 772
S.W.2d 449, 451 (Tex. Crim. App. 1989)). In applying this standard, we are to look at "the
totality of the circumstances" to determine if the officers had a substantial basis for concluding
that probable cause existed at the time of the questioned action. Eisenhauer v. State, 754 S.W.2d
159, 164 (Tex. Crim. App. 1988). 

 We believe the totality of the circumstances supports the trial court's implicit
finding that the officers had probable cause to arrest Jefferson. First, Officer Tijerina found the
stolen pickup in the apartment-complex parking lot only minutes after leaving the robbery scene
and beginning his search. Shortly after finding the stolen pickup, Tijerina saw Jefferson and
Wallace running toward the pickup; when the two men saw Tijerina, they first hid behind the
pickup, and a short time later began walking rapidly in the opposite direction. By running to the
stolen pickup and then hiding from the officer before fleeing, the men (1) were in a suspicious
place, and (2) engaged in behavior which would reasonably imply they were guilty of some felony
or breach of the peace. See Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (Supp. 1992). We do
not believe these actions were consistent with innocent activity. See Amores, 816 S.W.2d at 814. 
Even if this furtive behavior could be called innocent in itself, it may still help provide the basis
for a showing of probable cause. See Stull v. State, 772 S.W.2d 449, 451 (Tex. Crim. App.
1989). 

 Second, the three suspects matched the robbery victims' descriptions of the robbers. 
Jefferson, Wallace and Brown are black. The robbery victims described the man wearing the gray
jacket as between six feet and six feet-two inches tall. Jefferson, who was wearing a gray jacket
at the time of his arrest, is six feet tall. Moreover, the robbery victims described the robbers as
wearing black, gray and white clothing. At the time of their arrest, Jefferson was wearing a gray
jacket, Brown was wearing a white jacket and Wallace was wearing a black jacket. Jefferson
argues that jackets of those colors are not unusual and therefore do not contribute to a finding of
probable cause. It is true that any one jacket, by itself, did not appreciably increase the likelihood
that its wearer was involved in the robbery. We believe the possibility of a mere coincidence
decreased considerably when all three suspects' jackets matched exactly the victims' descriptions
of the robbers' clothing. Had one of the suspects been wearing, for example, a green or blue
jacket, the color of the clothing would be much less significant.

 Finally, during the investigatory stop the officers found a nylon stocking near
Wallace's feet and the wad of cash in Jefferson's pocket. As Jefferson points out, possession of
cash is not a crime, and finding a nylon stocking near Wallace's feet does not directly implicate
Jefferson in the robbery. Nevertheless, these items were part of the totality of the circumstances
in which the officers acted in arresting the three suspects. 

 We believe the facts and circumstances within the officers' knowledge at the time
of the arrest were sufficient to warrant a prudent belief that Jefferson had committed a crime. We
therefore hold that probable cause existed for the arrest. Because the officers had probable cause
to arrest Jefferson, their subsequent search was legal. The trial court properly denied Jefferson's
motion to suppress the discovery of the mask.



IMPROPER PROSECUTORIAL ARGUMENT


 In his second point of error, Jefferson contends the trial court erred by allowing
the prosecutor to make improper jury arguments during the punishment stage of the trial. The
prosecutor made the following remarks to the jury:



 Now, when I was a little girl, my father worked at a gas station. But back then
they called it a service station because when you pulled up into the service station,
the attendant came out and pumped your gas; he washed your windshield; he took
your money and made change. And now you go to a gas station and what
happens? You walk up, and there's a man or woman in a glassed-in cubicle. And
they're speaking to you through the speaker, and they have -- you have to slide your
money into that little drawer. And they take it in, and they slide your change out.


 Now, why has it changed so much just in my lifetime? It changed because of
people like Mr. Jefferson. Because of people --



At that point Jefferson's trial counsel objected to the prosecutor's argument as being outside the
record. The trial court overruled the objection, and the prosecutor continued her argument:



 It's because of criminals -- and Mr. Jefferson is a convicted felon -- that we
hesitate to go to 7-11's at night. It's because of people like Mr. Jefferson that we
lock ourselves in our homes. We have become the inmates. We are imprisoned
by the crime all around us.



She completed her argument by emphasizing to the jury two purposes of sentencing, deterrence
and punishment. On appeal, Jefferson argues that the prosecutor's remarks were outside the
record and improper because they were unsupported by the evidence. 

 Proper jury arguments fall within four categories: (1) summation of the evidence;
(2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4)
plea for law enforcement. Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). 
In analyzing a complaint, we must determine the probable effect the argument had on the mind
of jurors. Everett v. State, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986). The State contends
the argument in this case was a proper plea for law enforcement. We agree. 

 "A proper plea for law enforcement may take many forms, one of which is to argue
the relationship between the jury's verdict and the deterrence of crime in general." Borjan v.
State, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). The State may argue the impact of the jury's
verdict on the community. Id. In this case, the prosecutor's argument appears to be a statement
about the cumulative effect of crime on society, and a plea for the jury to deter such crime by its
punishment of Jefferson.

 We believe the present case to be analogous to Lopez v. State, 628 S.W.2d 77 (Tex.
Crim. App. 1982). In Lopez, the defendant, a high-school student, was on trial for murdering the
principal of his school. The prosecutor argued:



We must have, in a contemporary society, a return to the basic principles of law
and order. In this case, perhaps more than any other, demonstrates the kind of
conduct that threatens the very basic structure of the community in which we
reside. [sic] It threatens our schools. The next step, if persons can escape
criminal conduct on this type of evidence that has been produced, it will threaten
our homes. This evil, this growing evil, it must be challenged.



Id. at 80. The court of criminal appeals held this argument was a proper plea for law
enforcement. Id.; see also Minafee v. State, 482 S.W.2d 273, 276 (Tex. Crim. App. 1972). In
both Lopez and the present case, the prosecutor pointed out the deleterious effect on society of the
type of crime of which the defendant was accused, and asked the jury to hold the defendant
accountable for those effects. See Cunningham v. State, 484 S.W.2d 906, 911 (Tex. Crim. App.
1972) (rejecting a claim that the prosecutor improperly injected new facts into the case by arguing
crime was on the increase in the county). 

 Jefferson cites a number of cases in which the court of criminal appeals reversed
convictions because of improper argument. See, e.g., Thomas v. State, 527 S.W.2d 567, 568
(Tex. Crim. App. 1975); Rodriguez v. State, 520 S.W.2d 778, 780 (Tex. Crim. App. 1975);
White v. State, 492 S.W.2d 488, 489 (Tex. Crim. App. 1973). In each of those cases, however,
the prosecutor implied that the defendant was responsible for crimes other than the crime of which
he stood accused. 

 Although the prosecutor's argument was not a typical plea for law enforcement,
we do not believe the argument constituted reversible error. The argument did not imply
Jefferson committed other robberies. See Borjan, 787 S.W.2d at 58. Moreover, the prosecutor
related her argument to the goals of sentencing, punishment and deterrence. Considering the
record as a whole, we cannot say the argument was extreme or manifestly improper, nor did it
inject new and harmful facts into the case. See Logan v. State, 698 S.W.2d 680, 683 (Tex. Crim.
App. 1985); see also Decker v. State, 717 S.W.2d 903, 909 (Tex. Crim. App. 1983) (approving
an argument in which the prosecutor told the jury they were part of the battle in "a war on
crime"); Tijerina v. State, 786 S.W.2d 508, 513 (Tex. App. 1990, pet. ref'd) (the State is allowed
to argue to the jury that they may protect the community by assessing a lengthy prison sentence). 
We overrule the second point of error. 

 Finding no error, we affirm the trial-court judgment in all respects.



 John Powers, Justice

[Before Justices Powers, Jones and Kidd]

Affirmed

Filed: May 6, 1992

[Publish]
1. The court went on to hold that the officer exceeded the scope of his authority by opening
the matchbox, a conclusion that is irrelevant in this cause. Davis, slip op., at 5-6.
2. See Tex. Code Crim. Proc. Ann. arts. 14.01 - .04 (1977 & Supp. 1992) (setting forth
circumstances under which a warrantless arrest is justified).