

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00766-CR

Anthony **JOHNSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR0527
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  December 23, 2014

AFFIRMED

A jury convicted Anthony Johnson of murder. Johnson was sentenced to forty years in prison. In four issues, Johnson argues the trial court erred by denying his motions to suppress videotaped statements he made to police after his arrest and other evidence. We affirm.

### BACKGROUND

On the morning of November 15, 2011, Johnson was arrested just outside of an apartment that he shared with two other men. Minutes before Johnson's arrest, police officers received a 9-1-1 call from one of Johnson's roommates, Reggie Anderson. Anderson told the dispatcher that he

had seen Johnson shoot Romualde Ngande, who also lived in the apartment. Anderson told the dispatcher that he had fled from the apartment where the shooting occurred and gone to a nearby gas station to call 9-1-1.

A police officer met Anderson at the gas station, where he provided the officer with pertinent information, including the apartment number where the shooting occurred and Johnson's physical appearance and clothing. Anderson told the officer that Johnson was armed. Shortly thereafter, several police officers arrived at the apartment complex and saw a man leaving the apartment where Anderson said the shooting had occurred. The man was carrying a backpack and several other bags. The man fit the physical description provided by Anderson and was wearing the clothing described by Anderson. The officers identified themselves and told the man, who was later identified as Johnson, to stop, raise his hands, and lie face down on the ground. Initially, Johnson did not comply. Eventually, however, Johnson dropped the items he was holding and lay on the ground. The officers handcuffed Johnson. An officer swabbed Johnson's hands and fingers for gunshot residue because it was starting to rain.

Two of the officers entered the apartment that Johnson had just exited in order to check on the shooting victim. The door was unlocked. Inside the apartment the officers found Ngande and determined that he was no longer alive. Ngande appeared to have been shot in the stomach.

Johnson was then taken to the police station and questioned by a police detective. The questioning was videotaped. Another police officer took the baggage that Johnson was carrying to the police station. The officer then made a list of the items contained in the baggage. The items included clothing, money, and marijuana.

Johnson was indicted for Ngande's murder and pleaded not guilty. Johnson filed multiple motions to suppress, challenging the voluntariness of his statements to police and the lawfulness of his arrest and the searches of his person and the baggage he had with him at the time of his

arrest. At the suppression hearing, the State called three police officers to testify and presented Johnson's videotaped statements to a police detective. The trial court denied the motions to suppress. A jury found Johnson guilty of murder. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement. *Id*. We give almost total deference to the trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts. *Id*. We uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

## LAWFULNESS OF ARREST AND SEARCHES

In his first issue, Johnson argues the trial court erred by denying his motion to suppress the results of the gunshot residue testing and the contents of the baggage because his arrest was illegal.

When a defendant seeks to suppress evidence on the basis of an illegal arrest, the initial burden of proof is placed on the defendant to rebut the presumption of proper conduct. *Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009); *McGee v. State*, 105 S.W.3d 609, 613 (Tex. Crim. App. 2003). The defendant may satisfy this burden by establishing the absence of a warrant. *Young*, 283 S.W.3d at 872; *McGee*, 105 S.W.3d at 613. Once the absence of a warrant is shown, the burden shifts to the State to either produce evidence of a warrant or prove the reasonableness of the arrest. *Young*, 283 S.W.3d at 872; *McGee*, 105 S.W.3d at 613. The State demonstrates reasonableness by showing that one of the statutory exceptions to the warrant requirement has been met. *McGee*, 105 S.W.3d at 613.

In this case, no one disputes that Johnson was arrested without a warrant. The burden was therefore on the State to demonstrate that the arrest was reasonable. *See Young*, 283 S.W.3d at 872; *McGee*, 105 S.W.3d at 615.

As a general rule, police officers must obtain an arrest warrant before placing a person under arrest; however, under certain circumstances, an arrest may be legally procured without a warrant. *State v. Parson*, 988 S.W.2d 264, 266 (Tex. App.—San Antonio 1998, no pet.). In Texas, warrantless arrests are controlled exclusively by statute. *Id*. Chapter 14 of the Texas Code of Criminal Procedure sets out the specific circumstances under which an officer may conduct a warrantless arrest. *Id*. On appeal, the State argues that Johnson's warrantless arrest was justified under article 14.04 of the Texas Code of Criminal Procedure. Article 14.04 provides that:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

TEX. CODE CRIM. PROC. ANN. art. 14.04 (West 2005).

A police officer may make a warrantless arrest if: (1) there is probable cause to believe that an offense has been committed or is being committed; and (2) the arrest falls within one of the statutory exceptions to the warrant requirement specified in articles 14.01 to 14.04 of the Texas Code of Criminal Procedure. *Stull v. State*, 772 S.W.2d 449, 451 (Tex. Crim. App. 1989). Probable cause for a warrantless arrest exists when a police officer has reasonably trustworthy information, considered as a whole, sufficient to cause a reasonable, prudent officer to believe that a particular person has committed or is committing an offense. *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). When a named informant is a private citizen whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent. *Esco v. State*, 688 S.W.2d 358, 360-61 (Tex. Crim. App. 1982). We

consider the totality of circumstances when determining whether the facts were sufficient to give the officer probable cause to arrest the defendant. *Hughes*, 24 S.W.3d at 838.

Here, considering the information as a whole, the police officers had reasonably trustworthy information sufficient to cause a reasonable, prudent officer to believe that an offense had been committed. Anderson, a private citizen, initiated a 9-1-1 call and told a police officer that he had seen Johnson shoot Ngande. Anderson provided a description of Johnson and the number of the apartment where the shooting occurred. Anderson told the officer that Johnson was still in the apartment. When the police officers arrived at the apartment complex they saw a man, who fit the description provided, leaving the apartment number where the shooting occurred. The man was carrying baggage. Under the totality of the circumstances, the facts were sufficient to give the officers probable cause to arrest Johnson.

In addition to probable cause, the requirements of article 14.04 were met. Anderson represented that a felony had been committed. Again, the officers saw Johnson, who fit the description of the shooter, leaving the apartment where the shooting occurred. Johnson was carrying multiple bags, including a backpack, a nylon bag, and a computer case. These facts supported a finding that Johnson was fleeing the scene of a shooting and was in the process of escaping. Under these circumstances, there was no time to secure a warrant. Because the police had probable cause to believe that Johnson had committed an offense and because the warrant exception articulated in article 14.04 applies, Johnson's warrantless arrest was lawful.

### *Gunshot Residue Testing*

Johnson next argues that the trial court should have granted his motion to suppress because the police conducted an unlawful search of his person by swabbing his hands and fingers for gunshot residue. The State counters that the gunshot residue testing was reasonable because it falls within two related exceptions to the search warrant requirement: search incident to arrest and

exigent circumstances. Under the Fourth Amendment of the United States Constitution, a warrantless search of either a person or property is considered per se unreasonable subject to a few specifically defined and well-established exceptions, which include search incident to arrest and search under exigent circumstances. *McGee*, 105 S.W.3d at 615. It is the State's burden to show that the search falls within one of these exceptions. *Id*. "A search incident to arrest permits officers to search a defendant, or areas within the defendant's immediate control, to prevent the concealment or destruction of evidence." *Id*.

In *McGee*, the Texas Court of Criminal Appeals analyzed whether a visual search of the area between a suspect's buttocks was reasonable under the Fourth Amendment. *Id*. at 616-18. The suspect had been arrested for selling crack cocaine. *Id*. at 612-13. In analyzing the reasonableness of the search, the court looked at numerous factors, including the scope of the intrusion, the manner in which the search was conducted, the justification for the search, and the location of the search. *Id*. at 616-18. After determining that three of the four factors weighed in favor of the conclusion that the search was reasonable, it held that the trial court was correct in denying the motion to suppress. *Id*. at 618.

Here, Officer Michael Garcia testified at the suppression hearing that he was employed as a San Antonio police officer and was assigned to the evidence unit. On November 15, 2011, he was dispatched to the apartment complex where a shooting had taken place. When he arrived, he saw Johnson lying on the ground and handcuffed. Garcia approached Johnson and administered the gunshot residue test on Johnson's hands and fingers because it was starting to rain. As described by Officer Garcia, the scope of the intrusion was minimal; it involved briefly swabbing Johnson's hands and fingers. Officer Garcia said he had been trained to administer gunshot residue testing. And, as previously discussed, the officers had probable cause to believe Johnson had committed a felony. Significantly, Officer Garcia stated that he did the testing because it was

beginning to rain and the rain could have washed any gunshot residue off of Johnson's hands and fingers. All of the factors in this case weigh in favor of the conclusion that the swabbing of Johnson's hands and fingers for gunshot residue was reasonable. Therefore, the trial court did not abuse its discretion in denying Johnson's motion to suppress the results of the gunshot residue testing.

### *Contents of Baggage*

Johnson next argues the trial court should have granted his motion to suppress because the police conducted an unlawful search of the contents of his baggage. The State counters that this search was reasonable both as a search incident to arrest and as an inventory. "A search incident to a lawful arrest requires no warrant if it is restricted to a search of the person or objects immediately associated with the person of the arrestee." *Jones v. State*, 640 S.W.2d 918, 921 (Tex. Crim. App. 1982). The search of the arrestee or his personal effects does not have to take place at the site of the arrest. *Rogers v. State*, 774 S.W.2d 247, 264 (Tex. Crim. App. 1989), *overruled on other grounds*, *Peek v. State*, 106 S.W.3d 72 (Tex. Crim. App. 2003). The United States Supreme Court has held that the search of a jailed arrestee's clothing one day after his arrest was justified as a search incident to arrest. *United States v. Edwards*, 415 U.S. 800, 803-05 (1974).

An inventory is constitutionally permissible as long as it is not a ruse for general rummaging in order to discover incriminating evidence. *Florida v. Wells*, 495 U.S. 1, 4 (1990). "Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure." *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983). Inventories serve to protect (1) the owner's property while it is in custody; (2) the police against claims or disputes over lost or stolen property; and (3) the police from potential danger. *S. Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

The crux of Johnson's argument is that Officer Garcia did not conduct an inventory, based on his testimony at the suppression hearing. However, when viewed in the light most favorable to the trial court's ruling, Officer Garcia's testimony supports a finding that he conducted an inventory. Officer Garcia testified that after Johnson's arrest he transported Johnson's baggage to the police station for the purpose of inventorying its contents. He explained that he marked and initialed every item contained in the baggage and that he listed each item in an "inventory fashion" in his report. Officer Garcia indicated that he was required to "inventory the items" contained in the baggage, which consisted of clothing, caps, a computer, and drugs.

We conclude that, under the facts and circumstances presented, it was reasonable for Officer Garcia to take the baggage Johnson dropped at the time of his arrest to the police station. We further conclude that it was reasonable for Officer Garcia to inventory the contents of the baggage. Therefore, the trial court did not abuse its discretion in denying Johnson's motion to suppress the contents of the baggage.

## VIDEOTAPED STATEMENTS TO POLICE

In his second issue, Johnson argues that his videotaped statements to police should have been suppressed because his arrest was unlawful. However, as discussed above, Johnson's arrest was not unlawful. Therefore, the trial court did not abuse its discretion by not suppressing Johnson's videotaped statements based on an unlawful arrest.

In his third issue, Johnson argues that his videotaped statements to police should have been suppressed because the police did not obtain a knowing, intelligent, and voluntary waiver of his rights as required by article 38.22 of the Texas Code of Criminal Procedure. Specifically, Johnson complains that the detective who interviewed him "never obtained a written waiver" of Johnson's

rights and that Johnson "never waived his rights" and, as a consequence, his statements to police were involuntary and coerced.[1]

In *Miranda v. Arizona*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). *Miranda* provides that when an individual is taken into custody and subjected to questioning, he must be warned that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Id*. at 479. Article 38.22 of the Texas Code of Criminal Procedure codifies the holding of *Miranda* and sets out rules governing the admissibility of an accused's written and oral statements. *Jones v. State*, 944 S.W.2d 642, 650 n.11 (Tex. Crim. App. 1996); TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(1-5) (West Supp. 2014). Article 38.22, section 3(a)(2) of the Texas Code of Criminal Procedure requires an oral statement resulting from custodial interrogation to contain a warning informing the defendant of his rights as set forth in article 38.22, section 2(a), and a knowing, intelligent, and voluntary waiver of those rights. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2).

Contrary to Johnson's argument, the police were not required to obtain a written waiver from Johnson. A waiver of *Miranda* rights may be inferred from the actions and words of the person being interrogated. *State v. Oliver*, 29 S.W.3d 190, 191-93 (Tex. App.—San Antonio 2000, pet. ref'd). "An implied waiver of one's rights is established upon a showing that the accused: (1)

---

[1]Johnson also complains on appeal that the videotaped statements did not comply with article 38.22, section 3(a)(4), which states that all voices on the recording must be identified. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(4). However, we conclude Johnson has waived the complaint by failing to present it to the trial court. *See* TEX. R. APP. P. 33.1(a) (requiring complaint be made with sufficient specificity to make the trial court aware of the complaint).

was given the proper warnings; (2) understood the warnings and their consequences; and (3) made an uncoerced statement." *Hernandez v. State*, 387 S.W.3d 881, 885 (Tex. App.—San Antonio 2012, no pet.). In determining the existence of such a waiver, courts consider the totality of the circumstances. *Id.*; *Oliver*, 29 S.W.3d at 192-93.

In this case, the detective who questioned Johnson at the police station testified at the suppression hearing. According to the detective, immediately prior to questioning, he advised Johnson of his rights under *Miranda* and article 38.22, and Johnson indicated that he understood his rights. The questioning was videotaped, and the videotape was admitted into evidence. The videotape shows Johnson and a detective seated in an interview room at the police station. Before the questioning begins, the detective says to Johnson, "You know you are under arrest, right?" Johnson responds, "Yeah." The detective then advises Johnson that he needs to advise him of his rights. Johnson indicates that this is unnecessary because he has already heard his rights. The detective states that he is required to read Johnson his rights again. The detective then slowly and clearly reads each right from a paper in front of him. After reading all of the rights, the detective asks Johnson if he understands them. In response, Johnson says, "Yeah." The detective again asks Johnson if he understands his rights and Johnson again states that he does. The detective then begins the questioning by asking, "What happened man?" In response, Johnson answers this question and continues to answer subsequent questions posed by the detective. Johnson never asks for a lawyer. Johnson never asks that the questioning be terminated. The videotape further shows that the detective does not deny Johnson of any necessities, nor does the detective coerce or threaten Johnson in any way. After considering the totality of the circumstances, we conclude that the trial court did not abuse its discretion in finding that Johnson waived his rights, and this waiver was knowing, intelligent, and voluntary.

**FACEBOOK POSTS AND TEXTS**

In his fourth issue, Johnson argues that the trial court should have suppressed his Facebook posts and text messages because they were the product of police coercion and overreaching. However, the record does not show that this argument was presented to the trial court.

A complaint is not preserved for appellate review unless it is made to the trial court by timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). The purpose of requiring a specific objection in the trial court is (1) to inform the trial judge of the basis of the objection and give her the opportunity to rule on it; and (2) to give opposing counsel the opportunity to respond to the complaint. *Resendez*, 306 S.W.3d at 312.

Nothing in Johnson's argument during the suppression hearing indicates that he asked the trial court to suppress his Facebook posts and text messages based on the conduct of the police. We conclude this issue has not been preserved for our review.

**CONCLUSION**

The judgment of the trial court is affirmed.

Karen Angelini, Justice

Do not publish