

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00308-CR

**JIMMIE D. GREEN, JR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 249th District Court
### Johnson County, Texas
### Trial Court No. F46227

## MEMORANDUM OPINION

In two issues, appellant, Jimmie D. Green Jr., challenges his convictions for one count of burglary of a habitation, one count of aggravated robbery, one count of evading arrest, and two counts of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), 29.03, 30.02(c)(2), 38.04(b)(2)(A) (West 2011 & Supp. 2013). We affirm.

### I. BACKGROUND

#### A. Facts

This incident began with the burglary of a residence located at 2152 S.W.

Wilshire Boulevard in Burleson, Johnson County, Texas. This address encompasses two residences, some barns, and livestock. Access to the residences and barns is from a single driveway that is approximately 300 yards in length. Located approximately 200 yards down the driveway is the residence of Shaun and Anna Berry and their two children. The residence that was burglarized is located approximately 100 feet from the Berry's home and is occupied by Chris Cantu, his fiancée Jessica Leveret, and the couple's two children.

On February 16, 2012, at approximately 5:30 p.m., Shaun came home from work and noticed a white, Honda Civic backed up to Cantu's front porch. The trunk of the Civic was opened. Because he was suspicious of the Civic, Shaun, who was speaking to Anna on his cellphone, asked Anna to call 911.[1] Thereafter, Shaun observed two African-American males, one thin and one larger, exit the front door of Cantu's home. At trial, the thin African-American male was identified as appellant, while the larger African-American male was identified as Terry Speed. As appellant and Speed got into the Civic, Shaun put his truck into reverse and began backing down the driveway. At this point, Cantu arrived and pulled his Jeep Grand Cherokee next to Shaun's truck, which blocked the driveway. Cantu asked Shaun what was going on; the two decided to exit their vehicles and walk towards the Civic.

As Shaun and Cantu approached, appellant drove the Civic toward the back gate of the property. Realizing that the back gate was locked, appellant made a U-turn and drove the Civic towards Shaun and Cantu. As he tried to pass Shaun and Cantu's

---

[1] In his testimony, Shaun noted that Anna "wasn't far behind [him]" and that he "told her don't pull in the driveway and call the police, there's somebody here that shouldn't be here."

vehicles, appellant contacted Shaun's Dodge truck and a nearby barbed-wire fence. The contact removed the passenger-side mirror on the Civic and caused a scraping of the paint on the right side of the Civic. After seeing this, Shaun called 911 and ran towards his house to retrieve his 20-gauge shotgun.

As he exited his house with the shotgun, Shaun observed appellant open the driver's-side door and fire a shot from a .40-caliber pistol in the direction where he and Cantu were. Shaun responded by firing two shots at the Civic while Cantu ran inside to get his 12-gauge shotgun. After retrieving his shotgun, Cantu joined Shaun in firing upon the Civic. During this commotion, Speed was able to exit the Civic, get into Shaun's truck, and move Shaun's truck so that the Civic could escape. Appellant drove the Civic past Shaun's truck, picked up Speed, and exited the property by heading south on SH 174 toward Joshua, Texas.

Shortly after appellant turned onto the highway, Officer Jonathan Gomez of the Burleson Police Department arrived and spoke with Anna, who gave a description of the Civic and the direction it was travelling. However, Anna inaccurately described appellant and Speed as Hispanic males. A minute or two after Anna provided her description of the suspects, Shaun called 911 and identified the suspects as two African-American males.

Sergeant Curran Massey and Officer Patrick Jones of the Joshua Police Department heard the dispatch regarding the burglary. Approximately four minutes after hearing the dispatch, Sergeant Massey and Officer Jones spotted the Civic approaching. The Civic matched the descriptions provided by Anna and Shaun.

Sergeant Massey positioned the patrol car behind the Civic and activated the patrol car's overhead lights. Appellant apparently saw the patrol car and initially pulled onto the shoulder of the highway. However, shortly thereafter, appellant abruptly accelerated and attempted to re-enter the highway. Sergeant Massey utilized the PIT maneuver to cause the Civic to spin out and come to a stop.[2] Officers extracted appellant and Speed from the vehicle and placed them both under arrest.

## B.    Procedural Background

On March 22, 2012, appellant was charged by indictment with one count of burglary of a habitation, one count of aggravated robbery with a deadly weapon, one count of evading arrest, one count of aggravated assault of a public servant, and two counts of aggravated assault with a deadly weapon. The indictment also contained two felony-enhancement paragraphs. Thereafter, the State dismissed the one count of aggravated assault of a public servant and proceeded on the remaining counts.

Later, appellant filed a motion to suppress, which was denied after a hearing. The case proceeded to trial before a jury. At the conclusion of the evidence, the jury found appellant guilty on all counts and answered the deadly-weapon special issue in the affirmative. The jury also found the enhancement paragraphs contained in the indictment to be true and subsequently assessed punishment as follows: (1) confinement in the Institutional Division of the Texas Department of Criminal Justice for life for the burglary-of-a-habitation and aggravated-robbery-with-a-deadly-weapon counts; (2) twenty-five years' confinement for the evading-arrest count; and (3) ninety-

---

[2] Sergeant Massey described the PIT maneuver as "using the forward momentum of a police car to strike the rear quarter panel or rear bumper area of a suspect vehicle[,] causing it to lose traction and spin out."

nine years' confinement for the aggravated-assault-with-a-deadly-weapon counts. The trial court ordered the sentences to run concurrently and certified appellant's right of appeal. This appeal followed.

## II. APPELLANT'S MOTION TO SUPPRESS

In his first issue, appellant complains that the trial court abused its discretion in denying his motion to suppress because police officers did not have probable cause to execute a warrantless search.

## A.     Standard of Review

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When ruling on a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *Garcia-Cantu v. State*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

When a trial judge makes explicit fact findings regarding a motion to suppress, an "appellate court [must first] determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Kelly*, 204 S.W.3d at 818. "The appellate court then reviews the trial court's legal ruling[s] de novo unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id.*

## B.    Tips from Citizen-Informants

The crux of appellant's complaint in this issue centers on Anna's initial description of the perpetrators as Hispanic. Specifically, appellant argues that "the patrol officer did not have probable cause to stop as it was represented that the suspects were Hispanic[,] and Appellant and his co-defendant were clearly black."

When a police officer stops a defendant without a warrant, as was the case here, the State has the burden of proving the reasonableness of the stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An officer is justified in detaining a person for investigative purposes if the officer has a reasonable suspicion of criminal activity, even if the officer lacks probable cause. *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App.

1997).  Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity.  *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); *Woods*, 956 S.W.2d at 38.  In determining what constitutes reasonable suspicion, "[w]e look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up."  *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd).  Because reasonable suspicion is an objective standard, we disregard any subjective intent of the officer and we consider the totality of the circumstances.  *Ford*, 158 S.W.3d at 492-93.

The factual basis for an investigative stop need not arise from the officer's personal observation, but may be supplied by information from another person.  *See Brother*, 166 S.W.3d at 257.  "A citizen's tip may justify the initiation of a stop if the tip contains 'sufficient indicia of reliability' and the officer corroborates those facts supplied by the citizen-informant.  *Nacu v. State*, 373 S.W.3d 691, 694 (Tex. App.—San Antonio 2012, no pet.) (quoting *Arizpe v. State*, 308 S.W.3d 89, 92 (Tex. App.—San Antonio 2010, no pet.)).

A tip is entitled to greater weight when the informant gives a detailed description of the wrongdoing, along with a statement that the informant observed the event firsthand.  *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.).  "Furthermore, a person who is not connected with the police or who is not a paid

informant is considered inherently trustworthy when he advises the police that he suspects criminal activity has occurred or is occurring." *Id.*; *see State v. Stolte*, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no. pet.). "[W]hen the informant provides self-identifying information that makes himself accountable for the intervention, the degree of reliability significantly improves." *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (citing *Brother*, 166 S.W.3d at 257).

The most reliable form of a citizen tip is information given to the officer by a "face-to-face informant who has no other contact with the police beyond witnessing a criminal act." *Griffey*, 241 S.W.3d at 704-05 (citing *Cornejo v. State*, 917 S.W.2d 480, 483 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)). Because of the inherent reliability of such an informant, the information provided by that informant may be sufficient to establish reasonable suspicion without additional corroboration. *See id.* at 705.

"[C]orroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Brother*, 166 S.W.3d at 259 n.5. There is an inverse relationship between the reliability of the informant and the amount of corroboration needed to justify the stop—the less reliable the tip, the more corroborating information is needed. *Martinez*, 348 S.W.3d at 923 (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990).

### C.     The Traffic Stop

Here, both Anna and Shaun Berry notified dispatch at the Burleson Police Department that: (1) two male suspects were seen burglarizing their neighbor's house;

(2) the suspects fired shots at Berry and Cantu during the immediate flight from the scene of the crime; (3) the suspects fled the crime scene while driving an older model, white, Honda Civic that had a new seven-character license plate; (4) the Civic had sustained damage to the drive-side door panel from Shaun's shotgun blasts; and (5) the suspects fled southbound on SH 174 toward Joshua. The record reflects that Anna initially told police that the suspects were Hispanic; however, shortly thereafter, Shaun corrected Anna's report to reflect that the suspects were both African-American males.

Dispatchers broadcasted the information provided by Anna and Shaun. Sergeant Jody Trumble of the Burleson Police Department admitted initially relaying that the suspects were Hispanic based on Anna's tip; however, Sergeant Trumble issued a second broadcast reflecting that the suspects were African-American.

A few minutes after hearing Sergeant Trumble's broadcast, Sergeant Curran Massey of the Burleson Police Department spotted an older model, white, Honda Civic with new-style license plates and damage to the driver-side door travelling southbound on SH 174. Though the windows were heavily tinted, Sergeant Massey observed two males inside the Civic. The heavy tinting of the windows prevented Sergeant Massey from identifying the ethnicity of the occupants of the Civic.

Believing that the vehicle matched the descriptions provided by Anna and Shaun, Sergeant Massey activated his overhead lights and sirens and eventually forced the Civic off of the road after appellant failed to voluntarily stop his vehicle.

We conclude that the evidence adduced at the hearing on appellant's motion to suppress provides sufficient indicia of reliability of Anna and Shaun's reports. Anna

and Shaun provided a detailed description of the robbery; the suspects; the suspects' vehicle, including the newer license plates and the shotgun damage to the driver's-side door panel; and the direction in which the vehicle was travelling. This information was corroborated by police at the scene of the traffic stop. *See Pipkin*, 114 S.W.3d at 654 ("'Corroboration' in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified."). Moreover, the record reflects that Shaun observed the incident first-hand and that neither Shaun nor Anna had a connection with the police, other than reporting this incident. *See Navarette v. California*, No. 12-9490, 134 S. Ct. 1683, 188 L. Ed. 2d 680, 2014 U.S. LEXIS 2930, at *10 (Apr. 22, 2014) ("'[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 234, 103 S. Ct. 2317, 2330, 76 L. Ed. 2d 527 (1983))). Furthermore, Anna and Shaun both provided identifying information such that they placed themselves in a position to be identified and held accountable for the report. *See Griffey*, 241 S.W.3d at 704-05.

In light of the heightened indicia of reliability arising from the circumstances of Anna and Shaun's reports, police observations under the totality of the circumstances were sufficient to corroborate the reports and provide reasonable suspicion to stop and

detain appellant and Speed for further investigation.[3]  *See Martinez*, 348 S.W.3d at 923; *Brother*, 166 S.W.3d at 257; *see also Nacu*, 373 S.W.3d at 694; *Arizpe*, 308 S.W.3d at 92.

**D.     The Search and Arrest**

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures.  U.S. CONST. amend. IV; *see Gutierrez v. State*, 221 S.W.3d 680, 684-85 (Tex. Crim. App. 2007).  Warrantless searches are per se unreasonable unless the State can prove that the search was conducted pursuant to a recognized exception to the warrant requirement.  *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967)).  For example, incident to a lawful arrest, a law enforcement officer may conduct a full but reasonable search of a person.  *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 477, 38 L. Ed. 2d 427 (1973); *see McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003); *see also Busby v. State*, 990 S.W.2d 263, 270 (Tex. Crim. App. 1999).

A police officer may make a warrantless arrest if:  (1) there is probable cause to believe that an offense has been committed or is being committed; and (2) the arrest falls within one of the statutory exceptions to the warrant requirement specified in articles 14.01 and 14.04 of the Texas Code of Criminal Procedure.  *Stull v. State*, 772 S.W.2d 449, 451 (Tex. Crim. App. 1989).  Probable cause for a warrantless arrest exists when a police officer has reasonably trustworthy information, considered as a whole,

---

[3] The fact that Anna first identified the suspects as Hispanic is of no consequence because Shaun called shortly thereafter to amend Anna's report to reflect that the suspects were African-American. Moreover, as mentioned above, ample evidence of corroboration was adduced at the hearing on appellant's motion to suppress so as to provide reasonable suspicion for the stop.

that is sufficient to cause a reasonable, prudent officer to believe that a particular person has committed or is committing an offense. *See Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). A reviewing court is to consider the totality of the circumstances when determining whether the facts were sufficient to give the officer probable cause to arrest the defendant. *Chilman v. State*, 22 S.W.3d 50, 56 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

> Importantly, article 14.04 of the Texas Code of Criminal Procedure provides that:
>
> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

TEX. CODE CRIM. PROC. ANN. art. 14.04 (West 2005).

In the instant case, police received tips from Anna and Shaun about an incident that Shaun witnessed. Additionally, Anna and Shaun indicated that the suspects had fired shots as they escaped in the white Honda Civic. As we concluded earlier, the evidence produced during the hearing on appellant's motion to suppress, which also mirrored the information known to police at the time, provided sufficient indicia of reliability to Anna and Shaun's reports. *See Hughes*, 24 S.W.3d at 838. Accordingly, police had reasonably trustworthy information that provided probable cause that an offense had been committed. *See Stull*, 772 S.W.2d at 451; *see also Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009) (stating that probable cause is a "fluid concept that cannot be readily, or even usefully reduced to a neat set of legal rules"; however, noting that probable cause "involves a reasonable ground for belief of guilt that is

particularized with respect to the person to be searched or seized" (internal citations & quotations omitted)); *Chilman*, 22 S.W.3d at 56. Furthermore, the evidence adduced at the hearing on appellant's motion to suppress supported the trial court's finding of fact that appellant "fled the scene and was in [the] process of escaping." *See* TEX. CODE CRIM. PROC. ANN. art. 14.04. Therefore, there was no time to procure a warrant. Thus, because the police had probable cause that appellant had committed an offense, and because article 14.04 of the Texas Code of Criminal Procedure applies, we conclude that the warrantless arrest of appellant was authorized. *See id.*; *see also Stull*, 772 S.W.2d at 451. And because appellant was subject to a valid arrest, we conclude that the complained-of search was authorized as a search incident to a lawful arrest.[4] *See Robinson*, 414 U.S. at 235, 94 S. Ct. at 477; *McGee*, 105 S.W.3d at 615; *Busby*, 990 S.W.2d at 270. Accordingly, we overrule appellant's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant contends that the record does not contain sufficient evidence to support his convictions for burglary of a habitation, aggravated robbery, evading arrest with a vehicle, and aggravated assault with a deadly weapon.

### A.     Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a
> conviction, a reviewing court must consider all of the evidence in the light

---

[4] In his first issue, appellant appears to complain about the validity of the stop; however, he cites authority addressing warrantless searches. Therefore, out of an abundance of caution, we address both the validity of the stop and the subsequent search. Nevertheless, it is noteworthy that appellant did not complain about a particular area that was searched by police.

Green v. State                                                                                     Page 13

> most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not

unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

**B.      Burglary of a Habitation**

On appeal, appellant argues that the evidence adduced at trial does not demonstrate that he entered a habitation with intent to commit theft. Specifically, appellant contends that "[t]he testimony was inconsistent as to whether Appellant ever exited the home or not. No fingerprint analysis was ever conducted on the stolen items and no witness could clearly state that Appellant committed a burglary." We disagree.

A person commits the offense of burglary of a habitation if, without the consent of the owner, the person enters a habitation and commits or attempts to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(3); *see Reyes v. State*, 422 S.W.3d 18, 23-24 (Tex. App.—Waco 2013, pet. ref'd). A person commits a theft if "he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2013). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

Direct evidence of entry is not required; that element may be established by inference, just as inferences may be used to prove the elements of any other offense. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). A defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one that committed the burglary. *Id.*

The record reflects that someone broke into Cantu's home by forced entry

through the front door. The record also indicates that Samsung and Direct TV remote-control devices and a Samsung subwoofer were taken from Cantu's home without Cantu's consent and that these items were later found in the Civic that appellant was driving. Additionally, witnesses testified seeing appellant and Speed exit Cantu's front door, which was already opened; get into the Civic; and attempt to escape from the scene of the incident. Furthermore, police found a pry bar, a tool that is consistently used in committing burglaries, inside the Civic.

Based on the foregoing evidence, it was not unreasonable for the jury to infer that appellant participated in the burglary of Cantu's home. *See id.*; *see also* TEX. PENAL CODE ANN. § 30.02(a)(3); *Reyes*, 422 S.W.3d at 23-24. As such, we conclude that the record contains sufficient evidence to support appellant's conviction for burglary of a habitation. *See* TEX. PENAL CODE ANN. § 30.02(a)(3); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894.

### C.   Aggravated Robbery

With regard to his conviction for aggravated robbery, appellant asserts that the State failed to prove that he committed a theft. Once again, appellant argues that no witness saw him with the purported stolen items, and "no fingerprint analysis was performed on any of the items taken."

The elements of aggravated robbery are: (1) a person; (2) in the course of committing theft; (3) with intent to obtain or maintain control of property; (4) intentionally or knowingly; (5) threatens another with, or places another in fear of; (6) imminent bodily injury or death; and (7) uses or exhibits; (8) a deadly weapon. *See* TEX.

PENAL CODE ANN. §§ 29.02-.03 (West 2011); *see also Ramos v. State*, No. 01-12-00957-CR, 2014 Tex. App. LEXIS 113, at \*36 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, no pet.) (mem. op., not designated for publication). A firearm is a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2013). "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft. TEX. PENAL CODE ANN. § 29.01 (West 2011); *see Oggletree v. State*, 851 S.W.2d 367, 368-69 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *see also Ramos*, 2014 Tex. App. LEXIS 113, at \*36. Furthermore, "use" includes utilizing a gun during flight from a felony. *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) ("[W]hile the word 'use' typically means that a deadly weapon must be 'utilized, employed, or applied in order to achieve its intended result the commission of a felony offense or during immediate flight therefrom, that use could mean any employment of a deadly weapon, even simple possession, if such possession facilitates the associated felony.'" (quoting *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989))).

As mentioned above, the record reflects that appellant participated in the burglary of Cantu's residence, which involved the theft of several electronic devices. Furthermore, witnesses testified that, during the escape from the scene of the incident, appellant fired shots from a pistol toward Shaun and Cantu.

Based on the foregoing evidence, a reasonable factfinder could have inferred that the items found inside the Civic had been taken by appellant and that appellant used a firearm, a deadly weapon, during the immediate flight in furtherance of the theft. *See*

TEX. PENAL CODE ANN. §§ 29.02-.03; *see also Coleman*, 145 S.W.3d at 652; *Smith v. State*, 895 S.W.2d 449, 452 (Tex. App.—Dallas 1995, pet. ref'd) (noting that a factfinder may draw reasonable inferences and make reasonable deductions from the evidence). Accordingly, we conclude that the record contains sufficient evidence to support appellant's conviction for aggravated robbery with a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02-.03; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894.

### D.     Evading Arrest

Appellant also argues that the evidence is insufficient to support his conviction for evading arrest because he could not safely pull over and instead pulled back into the lane. Specifically, appellant asserts that he "pulled over when the police car activated the lights and sirens. However, there was an intersection where Appellant tried to safely pull over and couldn't so he pulled back into the lane."

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04(a). Any delayed compliance can be considered an attempt to evade arrest or detention. *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.). "[F]leeing is anything less than prompt compliance with an officer's direction to stop." *Id.* Even if there is no intent to ultimately evade, intent to evade arrest or detention even for a short time is sufficient to support a conviction for evading arrest with a motor vehicle. *Id.*; *see Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.) (observing

that the law does not require high-speed fleeing or even effectual fleeing; it requires an attempt to get away from a known officer of the law); *see also O'Quinn v. State*, No. 10-11-00114-CR, 2012 Tex. App. LEXIS 6168, at **10-11 (Tex. App.—Waco July 26, 2012, no pet.) (mem. op., not designated for publication).

At trial, Sergeant Massey testified that he signaled for appellant to pull over and come to a stop by turning on his overhead lights and sirens prior to the intersection of McMillan and SH 174. Both Sergeant Massey and Officer Jones stated that appellant had plenty of room to comply before reaching the intersection of McMillan and SH 174. In addition, the officers noted that, although appellant initially slowed down and pulled onto the right shoulder of SH 174, he then pulled back onto the highway and began to accelerate.

The jury, as factfinders, could reasonably have determined that appellant acknowledged the presence of law enforcement by slowing down and pulling onto the shoulder of SH 174 and that he attempted to evade arrest or detention by pulling back onto the highway and accelerating the vehicle. *See* TEX. PENAL CODE ANN. § 38.04(a); *Horne*, 228 S.W.3d at 446; *Mayfield*, 219 S.W.3d at 541; *see also O'Quinn*, 2012 Tex. App. LEXIS 6168, at **10-11. As such, we conclude that the record contains sufficient evidence to support appellant's conviction for evading arrest. *See* TEX. PENAL CODE ANN. § 38.04(a); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894.

E.    **Aggravated Assault With a Deadly Weapon**

Finally, with respect to appellant's conviction for aggravated assault with a deadly weapon, appellant contends that "no one could ascertain who had possession of

the firearm[;] it could have been co-defendant Speed just as easy as it could have been Appellant. Additionally, all DNA evidence ruled out Appellant's DNA as that being on the grip of the firearm."

A person is guilty of aggravated assault if he commits an assault which causes bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2); *see also id.* § 22.01(a)(2) (West Supp. 2013) ("A person commits [assault] if the person . . . intentionally or knowingly threatens another with imminent bodily injury . . . .").

At trial, both Shaun and Cantu testified that appellant opened the driver-side door and fired two rounds in their general direction. Shaun noted that he was within fifty feet of the Civic and had a clear view of the driver-side door. Cantu stated that appellant shot at him and that he saw the barrel of the gun used by appellant. Moreover, two spent .40-caliber shell casings were found in the front, driver-side floorboard of the Civic. In addition, police found a live .40-caliber round in the driver's seat, and when police extracted appellant from the vehicle, the loaded Hi Point .40-caliber, semi-automatic pistol fell from the driver's seat. Appellant is correct in stating that analysts concluded that "there was not enough DNA on the trigger to compare"; however, forensic analyst Amy Smuts opined that the absence of appellant's DNA does not necessarily mean that he did not handle the weapon. Furthermore, police found black gloves or socks beneath where appellant sat in the Civic and near a spent shell casing.

To the extent that the evidence conflicts, we note that it is within the province of

the factfinder—the jury, here—to resolve any conflicts in the testimony, and we are to defer to the factfinder's resolution of such conflicts. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *see also Chambers*, 805 S.W.2d at 461. Clearly, by convicting appellant of aggravated assault with a deadly weapon, the jury resolved any conflicts in the evidence against appellant. Accordingly, viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that appellant used or exhibited a deadly weapon while intentionally or knowingly threatening Shaun and Cantu with imminent bodily injury. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. We overrule appellant's second issue on appeal.

## IV. CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgments of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed June 26, 2014
Do not publish
[CRPM]